Good morning, Your Honors. Shanti Bryan for Appellant Ziong Yang. Excuse me. Sorry. This case arises at the intersection of several clearly established principles. The prosecutor's scheme in this case to exclude from the jury's consideration two important witnesses put such duress on them as it prevented them from making a free and voluntary choice of whether to testify or not. And that principle was established in Webb v. Texas. The scheme here was also akin to the situation in Valenzuela, Bernal, where the government purposely deported a defense witness. And in this case, it's slightly different because then the defense attorney had subpoenaed Mr. Cha. What if the defense attorney had taken that rather routine step and issued a subpoena and had him brought before court? How could that then undo the plea bargain if he were compelled to testify? I know Mr. Yang did not. He exercised the Fifth Amendment right. Mr. Vang. Vang, yeah. Yeah, Judo Vang. Actually, he refused to testify. And is there a – let me put a pause in that question. Is there a Fifth Amendment right? I just – I can't really – I don't know. I've always sort of assumed once you're convicted, that's the end of your Fifth Amendment right. But both briefs seem to assume that both of the two witnesses, Vang and Cha, continue to have a Fifth Amendment right before they were sentenced. Is that correct? I suppose there would be a Fifth Amendment right in case your testimony would develop evidence that could support further convictions. So that – and all parties assumed, and I believe Mong Cha's attorney had made it clear that he would take the Fifth Amendment and that it was pointless to call him to the witness stand. But at least that – if a subpoena had issued and either Cha's attorney or the prosecutor had opposed the testimony, at least that would have presented this issue to the trial court and the arguments could have been made at that time. Right. And a decision made. As you're saying, that issue really isn't before us because it wasn't before the trial court. And it was also seeming to me – I'm just thinking as I – I'm making this up as I go along, but it seemed to me if I'm going to be the sentencing judge and I order somebody who's about to be sentenced to testify, that's – I think I can – and he doesn't, then I can take that into consideration in sentencing. I mean, all I'm saying, isn't there a mechanism to bypass what you contend the prosecutor did here or to overcome it? The only mechanism I think would be to grant him use immunity. And that would have brought us into the realm of Straub, which is a case that I discuss in the briefs and I think is – would be exactly on point if what occurred is – was how you suggest. That isn't what happened here, but I think it's akin to that, which is the prosecutor created a mechanism. Well, was what the prosecutor did that absolute as you suggest in the brief? First of all, there's no written plea bargain. Is that correct? I don't – didn't find one in the record. There may have been. I may have missed it. I'm not sure if it was written, but the verbal record of his plea agreement, my understanding is that it did contain the condition that he wouldn't be sentenced until Mr. Yang's trial. And isn't that a very commonplace understanding in plea bargains, both written and unwritten? I do not think so. In fact, the Third District Court of Appeal in California, which oversees Sacramento, has now said that this exact situation is unconstitutional. And I would assume that the practice would not be happening anymore because of that decision. That was the California decision in Treadway that occurred, unfortunately, after Mr. Yang was convicted without the benefit of the exculpatory testimony. Well, I take the State court's determination in Mr. Yang's case not to be that how the prosecutor discouraged other witnesses. It didn't say that was okay. It instead went on to look at the second half of the question, which is did it make any difference. And in fact, we have a State court, I guess it was the Superior Court that sorted it out and said it didn't make any difference because by his own story, enhanced as it might have been by the expected testimony or the purported testimony of the people who didn't actually testify, he's still guilty under an eight or a better theory. Well, if that's the case, do we have anything further to talk about? I mean, why isn't that the case? Why don't we bow to the State court's determination on that subject? Well, that determination was wrong for two reasons. Number one, we look to the standard is whether the favorable evidence could reasonably be taken to put the whole case in a different light to undermine the confidence in the result reach, the actual verdict reach. And the record is clear that the jury in this case found that Mr. Yang was the shooter. That was the case that the prosecution presented. He said this is a simple case. It's all about Mr. Yang. He was the executioner. And that's exactly the case that the jury decided. The jury did not decide whether he was an eight or in a better. And in fact, the district court in this case acknowledged that the jury did not make that determination. So, first of all, that, that reasoning is flawed. But second, the second part. But that still doesn't tell me what would have actually changed. Because if the evidence in front of the jury was that at least these two people say he wasn't the shooter, but everything else suggests he's still going to be liable on an eight or in a better theory, you don't have a different verdict in the end. You don't have all the enhancements. And the court itself withdrew the enhancements that were linked to his particular participation as the shooter. But the ultimate judgment from the criminal prosecution would be exactly the same, wouldn't it? No. Why wouldn't it? Because the excluded evidence would have also undermined the theory that Mr. Yang was responsible as an eight or in a better. Okay. Then that may be what we need to hear. Okay. Because I haven't seen that so far. Any reason why not? Why to say that the State court's determination that he would have been convicted anyway was unreasonable? Why was it unreasonable for them to say that? It was unreasonable because Meng Cha and Judo Wang would have supported Mr. Yang's testimony that he only got out of the car and drew his weapon after he heard shots, believing that the shots were coming from the other, from the other, the victims who he believed was the other gang. The testimony of Mr. Cha and Mr. Wang would have shown there was no discussion or agreement as the cars were driving to the park. It would have shown that appellant Mr. Yang may have been following the car but it wasn't a chase. It would have shown that Mr. Yang regularly carried a gun. The excluded testimony most importantly perhaps would have shown that, would have given Mr. Yang the opportunity to address Judo Wang's assertion that when Mr. Yang got back in the car he said, my gun has jammed. Now this is a fact that respondent relies upon, the superior court relied upon on habeas to uphold this theory of aiding and abetting. But a reasonable explanation if Mr. Yang had been given the opportunity would have been he made that statement only in fear of reprisal from Wang Cha. That explanation would have, was supported by the forensic evidence which showed that the gun that Mr. Yang had, the black weapon, did not malfunction. It did not jam. So this, if that evidence had been presented to the jury, if that evidence that was excluded had been given to the jury, the jury, it would have supported the defense argument that Wang Cha acted alone. He surprised others in the car when he started shooting at the other gang members, that he acted suddenly and without the support of Mr. Yang. So this would have undermined the theory that Mr. Yang aided and abetted Wang Cha's shooting. But this evidence wasn't presented to the jury. The jury wasn't allowed to hear that aiding and abetting evidence. So this was just speculation on the part of the superior court that a jury would have come to that determination. Roberts. Thank you, counsel. Thank you. We'll hear from the government. Good morning, Your Honors.   I would also like to thank the defense's representative, Judge Tammi Krenzen, for the Respondent, Warden Woodford. I'd like to first start by saying that the prosecutor did not prevent the testimony of the co-defendants in this case with or without the plea agreement. The defendants — the co-defendants were not going to testify. So you can't — one can't say that there — that the prosecutor prevented it when they weren't even going to testify in the first place. What Petitioner — How do we know that? How do we know that? They weren't willing to testify with the plea agreements, and Vang, the co-defendant, even when he had his plea agreement and he was already sentenced, he still wasn't willing to testify. And then co-defendant Cha had never made any statement, and if the fear is, as they claim, that it was because he wouldn't have any — he wasn't given immunity. He certainly wasn't going to be given immunity without the plea agreement. And even in the trial court record, the trial court made some comments about the fact that Cha had — defense attorney wasn't planning to call Cha because he wasn't going to be available because of — because he wasn't going to testify. So the fact that — and even if — I don't say that you're wrong. I'm a little confused because what subsequently happened — excuse me — is that the superior court analyzed the issue and seemed to accept the premise of the argument that these — okay, let's consider what would have happened if these individuals had testified. And you'd think the trial court, if it was aware from the circumstances they weren't going to testify in any circumstance, that's the first thing it'd say. But it didn't say that. So I'm not — The trial court actually determined on the new trial motion — this was newly discovered evidence because these witnesses weren't available — said nothing. The trial court specifically said, I'm not making any finding regarding the — there was any prosecutorial misconduct or that there was anything that infected the trial. So the fact is, is because of their situations of not wanting to incriminate themselves and the potential that the prosecutor wasn't giving — wasn't going to give them immunity because the prosecutor didn't want a situation where they could later come in and say something and not have any repercussions for that. But that in no way prevented them from testifying. And so what Petitioners really — I think the argument is it's a psychological coercion because if they testify, they're going to lose the benefit of a plea agreement, potentially. But that wasn't — In other words, if they'd been sentenced before, their liability would have been fixed, judgment would have been entered, and, you know, theoretically, that would have been over for them. They could have been free to testify if they chose. The problem with that argument, certainly there was some — there was pressure on them, but that pressure would have existed whether the prosecutor offered a plea agreement or not. They would have had to make a decision to testify, knowing their co-defendants. And so it — Petitioners — what Petitioners really claiming is the prosecutor should have structured the plea agreement here to allow them to testify without any repercussions. And the prosecutor was under no obligation to do that. The prosecutor was not under any obligation to offer them a plea agreement in the first place. So if you remove the prosecutor's conduct, the plea agreement, and what actually ended up being the plea agreement, they weren't going to testify anyway. They certainly weren't going to testify without a plea agreement in place. Kennedy. Was it a condition of the plea agreement that they not testify? It wasn't that they not testify. It was that they wouldn't be sentenced until after they — until — well, and actually, in co-defendant veins, that wasn't a part of it. Now, whether that was inadvertent or — we don't know, but that wasn't a part of it. So it was just co-defendant chas. And, yes, that was a part of the agreement that — and the defense attorney had proposed that because the prosecutor was concerned about giving — going forward with one trial or allowing others to plea, he wanted a package deal. So this is what the co-defendant chas attorney suggested, we'll delay the sentencing. But — and that's the only condition of the plea agreement, according to your understanding on the record, that we're going to postpone sentencing, not that if you testify, the plea is revoked. That wasn't — I'm not aware of anything in the record that said that was part of — and even the prosecutor said it was fine for Chas to take the stand. If he wanted to go ahead and identify himself as the shooter, that's fine, but he wasn't going to have immunity. And that was the concern, because the prosecutor was concerned that when all was said and done, when — if there was a conviction, exactly what happened, a conviction in the trial and the other two had their plea agreements, they could turn around and they could identify themselves — one of them could identify himself as the shooter and try to exonerate their fellow gang member. And couldn't the defense attorney have also gone to the judge and said, Judge, please, you're the judge, you can determine your calendar, no matter what the parties say, sentence him — sentence Mr. Chas first and overcome that condition in the plea agreement? Certainly, the — a judge could have found that that could not be a part of the plea agreement. And then they're not in any better situation than they were, because without a plea agreement, there certainly wasn't going to be a testimony by a co-defendant. So that's the point that Respondent is making, is that the prosecutor didn't in any way prevent the testimonies. They had the option to do so, but with or without the plea agreement, they weren't testifying. What they wanted was immunity, and they weren't given immunity. And the prosecutor has no obligation to give immunity. There's no constitutional obligation to that. No, but the — there is some obligation if the prosecutor — for the prosecutor to have consistent theories in subsequent prosecutions. You can't say in one prosecution that X is the shooter and the — knowing that Y is the shooter, the true shooter, true. I mean, we dealt with that a little bit in a series of cases earlier, but, I mean, it's a — there's a due process question of whether or not the State truly believes somebody else is guilty and prosecutes under two inconsistent theories, two different cases, and it raises a due process question. Well, and we certainly don't know what the prosecutor would have done had the plea agreement not been — he obviously wanted a package deal. We don't know what he would have done. There's no evidence that he had suppressed any exculpatory evidence or that he knew that anybody was the shooter besides — besides Mr. Yang. I mean, there is the statement by the co-defendant, an original — or the statement, but then there was also an original statement that was inconsistent with that that said, I'm not sure if he shot or not. So — and that information was equally available to the defense. So there's nothing that the — there's no evidence that the prosecutor suppressed some exculpatory evidence in this case or believed that there was another shooter or even if he did, it still wasn't inconsistent with what he was — it is possible that there were two shooters, but it — but the evidence showed, and there was plenty of evidence to show that Mr. Yang was the shooter, and — but basically, the trial court, in an abundance of caution, struck the enhancements because of this — what the trial court deemed as newly discovered evidence from unavailable witnesses. And as has been the discussion before, the real issue here is prejudice, and it's certain — And let me — let me have you address it from this perspective. We really don't know what a jury would have done if the case had been presented with the evidence that was not — did not go before the jury. The jury spent — was very concerned about who the shooter was. It took a long time to reach a — reach a verdict. And juries do odd things, and, sure, there was a fair amount of evidence that would have suggested an aider and abetter, but we just don't know. The jury might well have said, look, he — he wasn't the shooter, and it might have returned a verdict of not guilty. We — we just don't know. And didn't — isn't it sort of odd that the trial court reconfigured everything to save the verdict? I — I think that the trial court reconfigured out of abundance of caution because of the concern of the fact that there was newly discovered evidence. I don't think the trial court never said — Oh, I'm sorry. No, go ahead. I apologize. Go ahead. The trial court never said that Mr. Yang was not the actual shooter. The trial court actually commented that the jury could have found that, but the trial court felt there was a reasonable probability that the jury could determine that there — someone else was the shooter, but that there was no question as to, based on the evidence, the overwhelming evidence, that even Mr. Yang admitted that he would be an aider and abetter. And this Court looks to see if any fair-minded jurist could disagree — or could agree with the fact that there was a — there was no reasonable probability the jury would have come to a different determination on the aider and abetter liability. And, of course, Cha was the driver, right? Yes. And also drove after the shooting, gets back in the car and helps him — He was the — he admitted he was the driver. He admitted he had a gun. He admitted he got out of the car. And then all of the other witnesses — and I could go into the inconsistencies with the co-defendant's testimonies that could have been impeached, but there's no need to do that. There was plenty of evidence to show the fact that his — he said his gun jammed. How do you know your gun jammed unless you were trying to use it? I understand the other argument, but based on the evidence, there was no reason — all he needed to be doing was the things that the evidence established he was doing to have aider and abetter liability. Any further questions? Thank you for your arguments. You have one minute for rebuttal. To the argument that the witnesses simply chose not to testify, I think we look to whether it was a free and unhampered choice. And a panel of this Court in United States v. Avages held that the most troubling aspect of the prosecutor's action in that case was the threat to the witness that the plea bargain would be revoked if she testified at the defendant's trial. So cases have shown much less threat than was threatened here. But does the record show that that was the threat? In other words, revocation of the plea? Or does it show that there might be consequences from the testimony if it were false? I think it was pretty clear throughout the proceedings that Mong Chaw would lose his plea bargain if he testified for the defendant. And I would also like to address the idea that the prosecutor does not have an obligation to make the witnesses available. And I don't think I made clear enough in the briefs that the prosecution's case of Straub makes it clear that the prosecution, when it's offering use immunity to its own witnesses, does have an obligation to grant immunity to favorable defense witnesses, because without that, you're severely distorting the fact-finding process. This Court recently said in Sitvak v. Hardison that prosecutors have a freestanding ethical and constitutional obligation as a representative of the government to protect the integrity of the court and the criminal justice system. And I think the prosecutor's mechanism here for distorting the fact-finding process just completely ignored that obligation. And it resulted in a verdict in this case that we cannot have confidence in. Thank you, counsel. Thank you. The case has heard, will be submitted for decision. Thank you both for your arguments.
judges: Carr, Thomas, Clifton